United States District Court
Southern District of Texas
**ENTERED**
November 15, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LANA LEIGH JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:20-CV-00233 |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Lana Leigh Johnson brought this action on September 24, 2020, seeking review of the Commissioner's final decision determining she was not disabled. (D.E. 1). On September 10, 2021, Plaintiff filed a Motion for Summary Judgment. (D.E. 19 and D.E. 20). On October 15, 2021, Defendant filed a Response, construed as a Cross Motion for Summary Judgment. (D.E. 21). For the reasons below, the undersigned **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **DENIED**, the Commissioner's Motion for Summary Judgment be **GRANTED** and this case be **DISMISSED**.

## I. JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g). This case has been referred to the undersigned pursuant to 28 U.S.C. § 636.

1 / 41

## II.   STANDARD OF REVIEW

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards.  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted); *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). The burden has been described as more than a scintilla but lower than a preponderance. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (citation omitted).  A finding of "no substantial evidence" occurs "only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (citations omitted).

In applying the substantial evidence standard, the Court scrutinizes the record to determine whether such evidence is present.  However, the Court does not reweigh the evidence, try the issues de novo or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citations omitted); *Carey*, 230 F.3d at 135 ("Conflicts in the evidence are for the Commissioner to resolve.") (citation omitted).

In evaluating a disability claim, the Commissioner follows a five-step process to determine whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment

meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work. *Martinez v. Chater*, 64 F.3d 172, 173-174 (5th Cir. 1995) (citations omitted). The claimant bears the burden of proof on the first four steps with the burden shifting to the Commissioner at the fifth step who must show that, in light of claimant's Residual Functional Capacity (RFC), claimant can perform other substantial work in the national economy. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

## III.   ISSUE PRESENTED

Plaintiff alleges the "ALJ's [Residual Functional Capacity] RFC determination is not supported by substantial evidence because the ALJ failed to develop the record concerning Plaintiff's physical limitations." (D.E. 20, Page 1).

## IV.   PROCEDURAL BACKGROUND

Plaintiff filed an application for benefits on September 28, 2018 at age 50, alleging disability as of March 1, 2018, due to degenerative disc disease, osteoarthritis in her back and ankle, neck problem, diverticulitis, hip problem, scoliosis, hand/wrist/arm problem, anxiety and a stomach problem. (D.E. 13-3, Page 11; D.E. 13-4, Pages 2-3; D.E. 13-6, Page 20; and D.E. 13-7, Page 6). After Plaintiff's applications were denied initially and upon reconsideration, at Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on August 29, 2019, at which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. (D.E. 13-3, Pages 39-66; D.E. 13-4, Pages 16 and 31; and D.E. 13-5, Pages 15-20). The ALJ issued an unfavorable decision on October 25,

2019, finding Plaintiff not disabled from March 1, 2018, the alleged onset date, through the date of the decision.  (D.E. 13-3, Pages 8-29).

The Appeals Council declined Plaintiff's request for review on July 23, 2020, making the ALJ's October 25, 2019 decision final.  (D.E. 13-3, Pages 2-5).  Plaintiff then filed this action on September 24, 2020, seeking review of the Commissioner's final decision.  (D.E. 1).

## V.    RECORD SUMMARY

On March 10, 2016, Plaintiff was treated at the Christus Spohn emergency room for abdominal pain.  (D.E. 13-14, Page 97).  The impression and testing showed diverticulitis for which Plaintiff was prescribed medication and advised to follow up with her treating physician.  (D.E. 13-14, Pages 98-99 and D.E. 13-15, Pages 3-4).

Plaintiff was treated at Corpus Christi Women's Clinic on July 5, 2016 for an annual appointment.   (D.E. 13-14, Page 85).   She reported exercising regularly, no muscle weakness, no joint or muscle pain or body aches, no anxiety or depression and no gastrointestinal issues.  (D.E. 13-14, Pages 86-87).  Plaintiff is noted as oriented with normal mood and appropriate affect.  (D.E. 13-14, Page 88).

Plaintiff was treated at the Orthopaedic Center of Corpus Christi on March 20, 2017 with a chief complaint of right foot pain.  (D.E. 13-8, Page 2-3).  Plaintiff is noted as being oriented with a normal mood and affect, running three times a week, having no fatigue or weakness, no joint pain or stiffness, no muscle weakness or pain, no psychiatric issues and no abdominal pain.  (D.E. 13-8, Pages 2-3).  Plaintiff is noted as having plantar fasciitis

and Achilles tendonitis and having no pain relief since her previous visit.  (D.E. 13-8, Page 3).  An MRI of her right foot on March 24, 2017 showed "[a]bnormal thickening with intermediate signal intensity at the insertional portion of the Achilles tendon consistent with moderate Achilles tendinosis with adjacent mild edema…and mild peritendinosis…no partial thickness tendon tear or other significant finding."  (D.E. 13-8, Page 6).  Plaintiff is noted as having used a walking boot as well as oral medications.  (D.E. 13-11, Page 9).

On April 3, 2017, Plaintiff was again treated at the Orthopaedic Center of Corpus Christi with a chief complaint of right foot pain.  (D.E. 13-8, Pages 4-6).  Plaintiff is again noted as being oriented with a normal mood and affect, running three times a week, having no fatigue or weakness, no joint pain or stiffness, no muscle weakness or pain, no psychiatric issues and no abdominal pain.  (D.E. 13-8, Pages 4-5).  Plaintiff is noted as having "[m]ild signs of plantar fasciitis with plantar heel pain" and "[s]ignificant tenderness to palpitation along the insertion of the Achilles tendon."  (D.E. 13-8, Page 5).

Plaintiff was treated at Future Focus Family Medicine on May 1, 2017.  (D.E. 13-9, Page 19).  Plaintiff reported her right foot and hip pain was getting worse but she had no muscle aches or muscle weakness.  (D.E. 13-9, Page 22).  Plaintiff reported having fatigue but also having a good energy level, no abdominal pain and is noted as ambulating normally without edema in any extremities.  (D.E. 13-9, Page 22).  Her anxiety, hyperlipidemia and glucose levels are noted as stable and her bursitis and plantar fasciitis are noted as worsening.  (D.E. 13-9, Page 23).

An MRI of Plaintiff right hip on May 5, 2017 showed mild generative type edema, no fracture, small marginal osteophytes and no full thickness cartilage defect or effusion in her hip joint.  (D.E. 13-9, Page 26).  The overall impression was insertional tendinitis of the right gluteus minimus and medius with minimal fluid and mild osteoarthrosis.  (D.E. 13-9, Page 26).

On May 11, 2017, Plaintiff was treated at the Orthopaedic Center of Corpus Christi. (D.E. 13-8, Pages 16-17).  Plaintiff continued to report right foot pain and that she "has had to decrease her activities," using "a golf cart to get around her property."  (D.E. 13-8, Page 16).  Surgery was discussed and Plaintiff is noted as requesting surgical treatment after mid-July 2017.  (D.E. 13-8, Page 17).  Post-operative requirements were also discussed, including five weeks of non-weight bearing activity followed by six weeks of physical therapy.  (D.E. 13-8, Page 17).  Plaintiff underwent surgery on her right foot on August 7, 2017.  (D.E. 13-8, Pages 19-23).

Plaintiff was treated at Corpus Christi Women's Clinic on July 18, 2017.  (D.E. 13-15, Page 6).  Plaintiff reported she did not exercise regularly and did not have headaches, neck stiffness, muscle weakness, gastrointestinal issues, joint or muscle pain or anxiety or depression.  (D.E. 13-15, Pages 6 and 8).  Plaintiffs is noted as oriented with normal judgment, insight mood and appropriate affect.  (D.E. 13-15, Page 9).

Plaintiff was treated at Future Focus Family Medicine on July 24, 2017 for pre-operative clearance.  (D.E. 13-9, Page 16).  Plaintiff reported right hip and right foot joint pain with no muscle aches or muscle weakness.  (D.E. 13-9, Page 18).  Plaintiff reported

fatigue but that she was "feeling fine" with a good energy level and no abdominal pain. (D.E. 13-9, Page 18).  Plaintiff is noted as ambulating normally, having no edema in any extremities, and being alert and oriented with normal memory, mood and affect.  (D.E. 13-9, Page 19).  Plaintiff was cleared for surgery on her right Achilles tendon which occurred the same month.  (D.E. 13-9, Page 19).

Plaintiff was treated on August 22, 2017, at the Orthopaedic Center of Corpus Christi for a rupture of her Achilles tendon after she fell twice post-surgery.  (D.E. 13-8, Pages 10-12).  It is noted Plaintiff would require a revision surgery and would delay her recovery by two weeks.  (D.E. 13-8, Pages 13-12).  Plaintiff underwent revision surgery the following day.  (D.E. 13-8, Page 14).

Plaintiff was treated at Nix Medical Center for her right Achilles ailment on September 7, 2017 for her suture removal.  (D.E. 13-3, Pages 21-23).  Plaintiff is noted as being in a splint/surgical dressing and using crutches.  (D.E. 13-13, Page 23).  Her sutures were removed, no tension was noted on the Achilles tendon, and she was advised to remain non-weightbearing in a short leg cast.  (D.E. 13-13, Page 23).

On September 22, 2017, Plaintiff was treated at Nix Medical Center for her right Achilles ailment.  (D.E. 13-13, Pages 19-21).  Plaintiff is noted as being in a cast, using crutches and "doing well."  (D.E. 13-13, Page 20).  Plaintiff was to remain in the cast for two additional weeks and then to transition to a boot and physical therapy.  (D.E. 13-13, Page 21).

Plaintiff was treated at Nix Medical Center on October 5, 2017 for her right Achilles ailment.  (D.E. 13-13, Pages 16-19)  Plaintiff is noted as using a walker and presenting to the clinic "to transition to weightbearing in the boot."  (D.E. 13-13, Page 18).  Plaintiff reported her Achilles tendon was improving.  (D.E. 13-13, Page 18).  Tenderness is noted without swelling and she is noted as "doing well."  (D.E. 13-13, Page 18).  Plaintiff was prescribed a boot and physical therapy.  (D.E. 13-13, Page 18).

On November 2, 2017, Plaintiff was again treated at Nix Medical Center for her right Achilles ailment.  (D.E. 13-13, Pages 13-15).  Swelling is noted as mild with full weightbearing as tolerated in a walking boot.  (D.E. 13-13, Page 15).  Plaintiff reported tenderness and it is noted she was undergoing physical therapy.  (D.E. 13-13, Page 15).  Plaintiff was advised to continue physical therapy and to transition to weightbearing in a regular shoe.  (D.E. 13-13, Page 15).

Plaintiff was again treated at Nix Medical Center on November 30, 2017 for her right Achilles ailment.  (D.E. 13-13, Pages 10-13).  Plaintiff is noted as having been "weightbearing as tolerated in a regular athletic shoe."  (D.E. 13-13, Page 12).  Plaintiff reported she had not been using a night splint, injections did not improve pain to the plantar fascia where she began having pain over the past weekend as she was putting up Christmas decorations.  (D.E. 13-13, Page 12).  Her surgical incision is noted as healed and she was advised to use the prescribed night splint and to resume stretching exercises for plantar fasciitis.  (D.E. 13-13, Page 13).   Plaintiff further advised that if her symptoms did not

improve, she could return and request a short leg walking cast.  (D.E. 13-13, Page 13).  Her physical therapy was discontinued.  (D.E. 13-13, Page 13).

On March 29, 2018, Plaintiff was treated at the Orthopaedic Center of Corpus Christi.  (D.E. 13-16, Page 22).  Plaintiff's chief complaint was back pain.  (D.E. 13-16, Page 22).  Plaintiff also reported she has been experiencing a "heavy feeling" in both legs with prolonged walking and standing and that previous physical therapy aggravated her symptoms.  (D.E. 13-16, Page 22).  Plaintiff is noted as oriented with normal mood and affect.  (D.E. 13-16, Page 23).  Plaintiff also reported she exercises by running three times a week.  (D.E. 13-16, Page 23).  Plaintiff reported she had no fatigue, no chest pains, no abdominal pain, no generalized joint pain, stiffness, weakness or muscle pain and no headaches.  (D.E. 13-16, Page 23).  Plaintiff is noted as have a non-antalgic gait with normal range of motion with mild pain, normal hip range of motion without pain and normal upper extremity strength.  (D.E. 13-16, Pages 24-25).  Plaintiff received an injection to relieve her pain, was advised to start a lumbar stretching program and to receive a future injection for additional pain relief.  (D.E. 13-16, Pages 25-26).

Plaintiff was treated at the Orthopaedic Center of Corpus Christi on April 30, 2018 with a chief complaint of neck pain and associated headaches and weakness in her hands as well as back pain.  (D.E. 13-16, Page 27).  Plaintiff reported the previous injection provided her "with relief of some of her right lower extremity symptoms."  (D.E. 13-16, Page 27).  Plaintiff also reported she received an additional injection on April 3, 2018 at Radiology Associates and Plaintiff reported this provided one month of pain relief.  (D.E.

13-16, Pages 27 and 38). Plaintiff further reported she "has had some return of her symptoms but overall is doing better." (D.E. 13-16, Page 27). Plaintiff complained of a "heavy feeling to the lower extremities during ambulation." (D.E. 13-16, Page 27). Plaintiff is noted as being "able to stand and walk independently without difficulty" and with a normal gait. (D.E. 13-16, Page 27). Plaintiff had normal strength in her upper extremities and pain with right hip range of motion. (D.E. 13-16, Pages 27-28). Plaintiff was found to have scoliosis, bursitis in her right hip and spondylosis with myelopathy and radiculopathy in her back. (D.E. 13-16, Page 28).

On May 3, 2018, Plaintiff was treated at Future Focus Family Medicine for a wellness check, complaining of back and neck pain. (D.E. 13-9, Page 12). Plaintiff reported she was having back surgery soon. (D.E. 13-9, Pages 12 and 14). Plaintiff reported lower back pain radiating down to her legs and in her arm, right hip and right foot as well as fatigue. (D.E. 13-9, Pages 14-15). Plaintiff is noted as ambulating normally with no edema in any extremities, having normal mood and affect and being oriented with normal memory. (D.E. 13-9, Page 15). Plaintiff was found to have worsening bursitis in her right hip and cervical disc degeneration with stable glucose levels and stable anxiety. (D.E. 13-9, Page 15).

Plaintiff was again treated at the Orthopaedic Center of Corpus Christi on May 17, 2018. (D.E. 13-16, Page 29). Plaintiff is noted as exercising by running three times a week and is also noted as being oriented with normal mood and affect. (D.E. 13-16, Page 29). Plaintiff reported no fatigue, no chest pains, no shortness of breath, no abdominal pain and

no generalized joint pain, stiffness, weakness or muscle pain.  (D.E. 13-16, Page 30).

Plaintiff is noted as walking and standing independently with a normal gait.  (D.E. 13-16,

Page 30).   Plaintiff reported her shoulder pain was "significantly improved" with the

injections she previously received.  (D.E. 13-16, Page 30).  Imaging of Plaintiff cervical

spine from May 11, 2018 showed "no significant degree of …stenosis at any level.  No

focal herniations.   Mild reversal of normal upper cervical lordosis.   Mild grade 1

retrolisthesis at C3-4, 2-3mm.  No fractures.  No destructive lesions.  Cord maintains

normal signal at all levels." (D.E. 13-16, Pages 30 and 41).  Imaging of her lumbar spine

showed "[s]table mild thoracolumbar levoscoliosis with associated mild degenerative disc

disease and facet arthropathy.  No focal herniation.  No significant degree of…stenosis.

No fracture or destructive process.  No anomalous segments.  No significant interval

change…" (D.E. 13-16, Pages 31 and 40).  It is noted that her cervical spine MRI did not

reveal any evidence of stenosis and her lumbar spine MRI "did not reveal any areas of

nerve root compression to explain her lower extremity symptoms." (D.E. 13-16, Page 31).

The conclusion was "the majority of her symptoms are coming from her right hip and

related areas" and Plaintiff would be treated on an as-needed basis in the future and referred

for further evaluation within the practice for her right hip.  (D.E. 13-16, Page 31).

On July 12, 2018, Plaintiff was treated at the Christus Spohn South Emergency

Room for rectal pressure, pain and bleeding.  (D.E. 13-10, Page 14).  Plaintiff was initially

treated with morphine for the pain but was then given Haldol and Benadryl.  (D.E. 13-10,

Page 15).  A CT scan confirmed diverticulitis in the sigmoid colon with "a tiny 1.1 cm

abscess." (D.E. 13-10, Page 16). Plaintiff was discharged the same day and told to follow up with her previously scheduled colonoscopy. (D.E. 13-10, Pages 16-17).

Plaintiff was treated on July 17, 2018 for right hip pain at Orthopaedic Center of Corpus Christi. (D.E. 13-16, Page 32). It continued to be noted that Plaintiff exercises by running three times a week and it was also noted that Plaintiff was oriented with normal mood and affect and had a normal gait. (D.E. 13-16, Page 33). Plaintiff reported no fatigue, no chest pains, no abdominal pain, no generalized joint pain, stiffness, weakness or muscle pain and no headaches. (D.E. 13-16, Page 33). Range of motion in her hip was normal without pain. (D.E. 13-16, Page 34). Additional imaging was ordered because previous imaging did not "completely explain" her symptoms. (D.E. 13-16, Page 34). Imaging of Plaintiff's right hip on July 27, 2018, showed a "[s]mall tear of the superior labrum" with "[n]o chondral defects and "[n]ormal osseous morphology." (D.E. 13-15, Pages 17-18 and D.E. 13-16, Pages 43-44). There was also moderate osteoarthritis of the hip joint with minimal degenerative changes. (D.E. 13-16, Page 45).

Plaintiff had a colonoscopy on August 3, 2018 and it was noted Plaintiff had "[d]iverticulosis in the entire examined colon." (D.E. 13-8, Page 31). A gastric biopsy showed "[m]ild inactive chronic gastritis." (D.E. 13-9, Page 33). A high fiber diet was recommended and Plaintiff was discharged. (D.E. 13-8, Page 31).

On August 7, 2018, Plaintiff was again treated at the Orthopaedic Center of Corpus Christi with a chief complaint of right hip pain and for follow up regarding the results of additional imaging. (D.E. 13-10, Page 11). Plaintiff is noted as being oriented with normal

12 / 41

mood and affect, exercising by running three times a week and having no fatigue or abdominal pain.  (D.E. 13-10, Page 11).  Plaintiff reported no fatigue, no chest pains, no abdominal pain, no generalized joint pain, stiffness, weakness or muscle pain and no headaches.  (D.E. 13-16, Pages 36-37).  Plaintiff is noted as having a small tear of the superior labrum in her right hip and an overall impression of "[u]nspecified sprain of the right hip."  (D.E. 13-10, Page 12).  It is noted that the "articular surface appears to be well maintained" and the "labral tear in the right hip [was] a fairly small tear."  (D.E. 13-10, Page 12).  A right hip injection was discussed.  (D.E. 13-10, Page 12).

Plaintiff was treated at Corpus Christi Women's Clinic on August 14, 2018.  (D.E. 13-15, Page 23).  Plaintiff is noted as not exercising regularly, having diverticulosis and chronic right lower quadrant pain.  (D.E. 13-15, Page 23).  Plaintiff denied having any muscle weakness, joint or muscle pain, anxiety or depression.  (D.E. 13-15, Page 25).  Her mood is noted as normal and affect appropriate with intact insight and judgment.  (D.E. 13-15, Page 26).

Plaintiff received a hip injection for right hip pain on August 22, 2018 and reported a "significant reduction in pain following procedure."  (D.E. 13-16, Page 46).

On September 5, 2018, Plaintiff was treated at Future Focus Family Medicine with a chief complaint of irritable bowel syndrome and anxiety.  (D.E. 13-9, Page 8).  Plaintiff is noted as regularly exercising and having no side effects from medication.  (D.E. 13-9, Page 10).  Plaintiff reported moderate right hip pain as well as right foot and back pain with no muscle aches and no muscle weakness.  (D.E. 13-9, Page 11).  Plaintiff also

reported fatigue and is noted as ambulating normally.  (D.E. 13-9, Page 11).  Plaintiff is further noted as having a normal mood and affect and being alert and oriented with normal memory with no edema in any extremities.  (D.E. 13-9, Page 11).  Plaintiff's hypertension, anxiety disorder, iron deficiency, hyperlipidemia and glucose levels are noted as stable.  (D.E. 13-9, Pages 11-12).  Plaintiff was further noted as having a hip disorder, irritable bowel syndrome and cervical disc degeneration.  (D.E. 13-9, Page 12).

Plaintiff was treated at Future Focus Family Medicine on September 18, 2018 with a chief complaint of neck pain, stiffness and swelling and a sore throat.  (D.E. 13-9, Pages 5-8).  Plaintiff reported joint pain in her right hip, right foot and back with no muscle aches and no muscle weakness.  (D.E. 13-9, Page 7).  Plaintiff reported no abdominal pain and no weakness, is noted as ambulating normally and it is noted Plaintiff's last diverticulitis episode was March 10, 2016.  (D.E. 13-9, Pages 6-8).  Plaintiff was prescribed antibiotics.  (D.E. 13-9, Page 8).  An ultrasound showed an enlarged thyroid gland.  (D.E. 13-9, Page 23).

Plaintiff was treated by Dr. Jennifer Amaral on November 12, 2018 for her thyroid issues.  (D.E. 13-15, Page 44).  Her thyroid function tests are noted as normal.  (D.E. 13-15, Page 44).  Plaintiff reported she does not exercise, did not have any neck, shoulder, joint or abdominal pain, did not have muscle aches or loss of strength but did have joint stiffness and leg cramps and fatigue.  (D.E. 13-15, Pages 45-46).  Plaintiff was scheduled for a six month follow up.  (D.E. 13-15, Page 44).

On October 5, 2018, Plaintiff was treated at Future Focus Family Medicine with a chief complaint of a UTI and blood pressure issues.  (D.E. 13-9, Page 2).  Plaintiff is noted as having an "occasional" exercise level with "no exercise intolerance," fatigue, difficulty urinating with increased urinary frequency and joint pain in her hip, foot and back with no muscle aches or muscle weakness.  (D.E. 13-9, Pages 3-4). Plaintiff is noted as ambulating normally with stable hypertension and generalized anxiety disorder as well as goiter, irritable bowel syndrome, a hip disorder and cervical disc degeneration.  (D.E. 13-9, Pages 4-5).

Plaintiff was treated at Baylor College of Medicine ("BCM") Ambulatory in Houston Texas on October 15, 2018 for right hip pain which she reported started two to three years prior without trauma.  (D.E. 13-11, Page 14).  Plaintiff stated she had received multiple injections in her right hip which provided some relief but never fully relieved the pain.  (D.E. 13-11, Page 14).  Plaintiff is noted as having a normal mood and affect and being alert and oriented.  (D.E. 13-11, Page 14).  A plan was entered for a right hip arthroscopy, labral repair and osteoplasty.  (D.E. 13-11, Page 15).

On October 22, 2018, Plaintiff completed a Function Report, stating she lived with her family, could not sit or stand for over 30 minutes, could not lift anything over ten pounds and could not squat or bend.  (D.E. 13-7, Pages 15 and 19).  Plaintiff stated her typical day was taking her medication, completing personal grooming requiring the use of a chair in the shower and taking care of her two dogs and daily cooking with her husband's help.  (D.E. 13-7, Pages 14-15).  Plaintiff stated she also performs household chores

including cleaning, sweeping and mopping.  (D.E. 13-7, Page 16).  Plaintiff stated she could go out alone and could drive and ride in a car but could not take long drives without hip and back pain.  (D.E. 13-7, Page 17).  She also reported she shops for groceries, pet supplies and gifts in stores and by phone and computer.  (D.E. 13-7, Page 17).  Plaintiff further reported she could pay bills and manage a savings and checking account.  (D.E. 13-7, Page 17).  Additionally, Plaintiff stated she likes to read, watch television, play games, talk on the phone, paint, spend time with her family and go shopping and to restaurants once a week.  (D.E. 13-7, Page 18).  She also stated she goes out unaccompanied on short trips.  (D.E. 13-7, Page 18).  Further, Plaintiff reported she could pay attention for an hour and could follow instructions and get along well with authority figures.  (D.E. 13-7, Page 19-20).

Plaintiff was treated at BCM Ambulatory on December 5, 2018 for a follow up after her hip surgery on November 27, 2018.  (D.E. 13-11, Page 19).  Plaintiff is noted as "progressing well" and "[p]ain is well tolerated."  (D.E. 13-11, Page 19).  Plaintiff is noted as alert, oriented with a normal mood and affect.  (D.E. 13-11, Page 19).

On January 2, 2019, Plaintiff was again treated at Future Focus Family Medicine for treatment of her hypertension, glucose levels and hyperlipidemia.  (D.E. 13-12, Page 2).  Plaintiff is noted as having an "occasional" exercise level and complaining of frequent urination.  (D.E. 13-12, Pages 3-4).  Plaintiff reported physical therapy was helping her right hip, she had fatigue with weakness in her arms and hands and she had muscle aches and weakness with joint pain in her right hip, right foot and back.  (D.E. 13-12, Page 4).

Plaintiff reported her energy level was good, she had no abdominal pain or exercise intolerance and was "feeling as well as can be expected." (D.E. 13-12, Page 4). She is reported as ambulating normally with normal tone and movement in all extremities. (D.E. 13-12, Page 5). A urinalysis, CBC and comprehensive metabolic panel were all normal. (D.E. 13-12, Page 12).

Plaintiff was treated at Corpus Christi Neurology on January 16, 2019 for jerking movements in her arms and legs at night as well as numbness and hypersensitivity of the tops of her feet. (D.E. 13-11, Page 10). Plaintiff is noted as alert with an intact mental status, normal gait and posture with the ability to walk on the heels and toes without difficulty and having good strength proximally and distally in the arm and legs. (D.E. 13-11, Page 11). It is noted that "[t]his may be a manifestation of general neuromuscular excitability" and Plaintiff's medication was switched from Flexeril to Neurontin which she previously "tolerated well." (D.E. 13-11, Page 11). An EEG the same day was normal. (D.E. 13-11, Page 12).

Plaintiff underwent a sleep study on January 17, 2019 and was found to have poor sleep quality. (D.E. 13-11, Pages 30-31). Plaintiff was diagnosed with mild sleep apnea and weight loss was recommended as well as a CPAP study. (D.E. 13-11, Page 31). On January 24, 2019, Plaintiff underwent a second sleep study using a CPAP machine. (D.E. 13-11, Pages 34-35). Plaintiff is noted as having slept better with the CPAP, which she tolerated well. (D.E. 13-11, Page 34).

On January 23, 2019, Plaintiff was again treated at BCM Ambulatory for a surgery follow up.  (D.E. 13-11, Page 24).  Plaintiff is again noted as "progressing well" and "[p]ain is well tolerated."  (D.E. 13-11, Page 24).  Plaintiff was scheduled for a three month follow up.  (D.E. 13-11, Page 24).

On February 5, 2019, Dr. Hector Ortiz conducted a disability consultative examination.  (D.E. 13-12, Page 34).  Plaintiff reported she had two spinal fusions in 2015, had daily neck pain with stiffness and a decreased range of motion with numbness and tingling.  (D.E. 13-12, Page 34).  Plaintiff also reported back pain being treated with medication, physical therapy and injections.  (D.E. 13-12, Page 34).  Plaintiff further stated she had right hip pain and associated stiffness and decreased range of motion at least three times weekly after having obtained some relief after surgery.  (D.E. 12-12, Page 34).  She also reported some pain, stiffness and decreased range of motion in her right foot.  (D.E. 13-12, Pages 34-35).  Plaintiff reported she is able to perform light household duties, dress and bathe herself, sit for an hour, stand for 30 minutes, walk for one block, lift ten pounds, climb ten steps and drive.  (D.E. 13-12, Page 35).  Plaintiff is noted as appearing "uncomfortable on arising from the sitting position and ambulates with an antalgic gait but did not require assistive devices."  (D.E. 13-12, Page 37).  Plaintiff is noted as being "unable to stand on right heel or toes bilaterally and bending forward causes lower back pain."  (D.E. 13-12, Page 38).  Plaintiff is further noted as having joint tenderness, swelling or stiffness in her hand with a normal range of motion and a 5/5 strength in all upper major muscle groups in her upper extremities.  (D.E. 13-12, Page 38).  In her lower extremities,

18 / 41

Plaintiff is noted as having tenderness over the right Achilles tendon with ankle stiffness and a decreased range of motion. (D.E. 13-12, Page 38). She had 5/5 strength in all lower extremity major muscle groups. (D.E. 13-12, Page 38). Plaintiff is noted has having tenderness to palpitation in her hip and lower back. (D.E. 13-12, Page 38). Plaintiff is also noted as left hand dominant with right hand limited to 20 pounds and left hand at 50 pounds. Plaintiff was found to have the "ability to handle small objects such a[s] buttons on clothing." (D.E. 13-12, Page 39). An x-ray of Plaintiff's lumbar spine showed mild degenerative disc disease, facet arthropathy and levoscoliosis without no spondylolisthesis or fracture and stable levoscoliosis and an x-ray of her right hip was normal. (D.E. 13-12, Pages 36 and 40-41).

On February 7, 2019, state agency physician Dr. Kavitha Reddy opined Plaintiff had the physical RFC to occasionally lift and/or carry 20 pounds and to frequently lift ten pounds; to stand and/or walk about six hours in an eight hour workday; to sit with normal breaks for six hours in an eight hour workday; and to push and/or pull without restriction. (D.E. 13-4, Page 11). Dr. Reddy also opined Plaintiff had no postural, manipulative, visual, communicative or environmental restrictions. (D.E. 13-4, Page 11).

Plaintiff was treated at Corpus Christi Urology on February 12, 2019 complaining that she did not completely empty her bladder upon urination. (D.E. 13-12, Page 46). Plaintiff reported she was found to have kidney stones on a CT scan done for irritable bowel syndrome. (D.E. 13-12, Page 46). Plaintiff reported a headache, blurry vision, chest pains, incontinence, chronic pack pain with arthritis and painful joints and dizziness. (D.E. 13-

12, Page 47). Plaintiff was advised that her urinary issues were "mostly due to her multiple surgeries and her multiple medications" and she should "continue double [and timed] voiding." (D.E. 13-12, Page 49).

On February 14, 2019, Dr. Ryan Hammond, Psy.D., a state agency doctor, opined Plaintiff's mental impairments "impose no more than non-severe impact on functioning." (D.E. 13-4, Page 9). He opined Plaintiff had a mild impairment in her ability to understand, remember and apply information; to interact with others; to concentrate, persist and maintain pace and to adapt or manage oneself. (D.E. 13-4, Page 9). The same day, Plaintiff's claim was denied initially. (D.E. 13-4, Page 15).

Plaintiff was treated at Corpus Christi Neurology on February 19, 2019 for a follow up. (D.E. 13-15, Page 52). Plaintiff reported she was doing well with gabapentin. (D.E. 13-15, Page 52). Plaintiff is noted as having normal gait and posture. (D.E. 13-15, Page 52). She was noted as "doing better" and her EEG and thyroid function tests were normal. (D.E. 13-15, Page 52).

On March 11, 2019, Plaintiff completed another Function Report, reporting she lived with her spouse and spent her day taking care of her personal grooming, doing light housework including laundry, taking care of her two dogs, laying down and frequently using the bathroom. (D.E. 13-7, Pages 41-42). She also reported she prepares her own simple meals daily. (D.E. 13-7, Page 43). Plaintiff reported she drives alone for short periods, including a golf cart in her yard, and goes grocery shopping once a week but her husband goes with her for larger shopping trips to lift and unload the heavy items. (D.E.

13-7, Pages 44 and 51-52).  She further stated she could pay bills and handle a savings and checking account and she enjoyed reading, watching television, painting, decorating, playing bunco in a group once a month and attending her grandsons' sporting games.  (D.E. 13-7, Page 45).  Plaintiff also reported physical limitations, including lifting, squatting, kneeling, bending, reaching, standing, walking, sitting and using her hands.  (D.E. 13-7, Pages 46 and 52).

Plaintiff was treated at Nix Medical Center on March 19, 2019 for her right Achilles tendon ailment.  (D.E. 13-13, Pages 8-11).  Plaintiff reported she injured her right ankle and foot when she was getting off the ground from picking up an object under her vehicle. (D.E. 13-13, Page 9).  Plaintiff is noted as having swelling in her right foot.  (D.E. 13-13, Page 10).  Plaintiff was advised to be "weightbearing as tolerated" in a walking boot, to rest her ankle and was scheduled for a four week follow up.  (D.E. 13-13, Page 10).

Dr. Teresa Fox, a state agency physician, confirmed Dr. Reddy's physical RFC findings on March 21, 2019, opining Plaintiff had the physical RFC to occasionally lift and/or carry 20 pounds and to frequently lift ten pounds; to stand and/or walk about six hours in an eight hour workday; to sit with normal breaks for six hours in an eight hour workday; and to push and/or pull without restriction.  (D.E. 13-4, Page 26).  Dr. Fox also opined Plaintiff had no postural, manipulative, visual, communicative or environmental restrictions.  (D.E. 13-4, Page 26).

On March 22, 2019, Dr. Margaret Meyer, a state agency physician, confirmed Dr. Hammond's findings, opining Plaintiff's mental impairments "impose no more than non-

severe impact on functioning." (D.E. 13-4, Page 24). She also opined Plaintiff had a mild impairment in her ability to understand, remember and apply information; to interact with others; to concentrate, persist and maintain pace and to adapt or manage oneself. (D.E. 13-4, Page 24). The same day, Plaintiff's claim was denied upon reconsideration. (D.E. 13-4, Page 30).

On April 1, 2019, Plaintiff was treated at Future Focus Family Medicine to "discuss consults with neurology, sleep study and daily elevated blood pressure readings/headaches in the PM." (D.E. 13-15, Page 91). Plaintiff is noted as denying chest pain and irregular heartbeat and reporting having muscle spasms from her neck down her back with numbness in her feet with intermittent abdominal pain. (D.E. 13-15, Page 91). Plaintiff is noted as having a full range of motion in her neck and wearing a boot on her right foot. (D.E. 13-15, Page 92). Plaintiff was found to have hypertension, generalized anxiety disorder, irritable bowel syndrome without diarrhea, mixed hyperlipidemia, cervical disc generation and sleep apnea. (D.E. 13-15, Page 92). She was prescribed hypertension medication. (D.E. 13-15, Page 92).

Plaintiff was treated at Nix Medical Center on April 18, 2019 for her right Achilles ailment. (D.E. 13-13, Pages 5-8). Plaintiff is noted as having "been weightbearing as tolerated" in a walking boot for Achilles tendonitis after injuring her right ankle while bending down to pick up an object from under her truck. (D.E. 13-13, Page 7). Plaintiff is noted as ambulating with a cast boot, being alert and oriented with a normal mood and affect and having tenderness in her right Achilles tendon. (D.E. 13-13, Page 7). An MRI

indicated her Achilles tendon was intact.  (D.E. 13-13, Pages 7 and 25).  Plaintiff opted to proceed with a walking cast for three additional weeks.  (D.E. 13-13, Page 7).

Plaintiff was treated at BCM Ambulatory on April 24, 2019 as a follow up to her November 2018 hip surgery.  (D.E. 13-15, Page 56).  Plaintiff reported her pain has been "on and off but recently worsened."  (D.E. 13-15, Page 56).  Plaintiff is noted as having "post op stiffness" and was prescribed injections.  (D.E. 13-15, Page 56).

On May 6, 2019, Plaintiff was treated by Dr. Ann Aleman for treatment of osteoarthritis.  (D.E. 13-15, Page 71).  Plaintiff is noted as having unspecified joint pain and osteoarthritis.  (D.E. 13-15, Page 71).  Plaintiff reported she had no fatigue and diverticulitis but no abdominal pain or diarrhea or frequent urination.  (D.E. 13-15, Pages 72-73).  Plaintiff further reported she had joint pain in her lower back, shoulders, neck, hips, feet, ankles and right knee causing her to have a hard time to transition from sitting to standing and causing pain at a seven out of ten.  (D.E. 13-15, Page 74).  Plaintiff is noted having normal range of motion in her cervical spine, normal forward and lateral bending in her lumbar spine, normal range of motion in her shoulders, elbows and wrists and normal range of motion in her hips and knees.  (D.E. 13-15, Page 75).  Plaintiff was prescribed tramadol and scheduled for a three week follow up.  (D.E. 13-15, Pages 71 and 74).

Plaintiff was treated at Nix Medical Center on May 9, 2019 for her right Achilles ailment.  (D.E. 13-13, Pages 3-5).  Plaintiff is noted has having done well after surgery in 2017 but having intermittent swelling and occasional pain.  (D.E. 13-13, Page 4).  Plaintiff reported she now had significant pain for which she was taking gabapentin and tramadol.

(D.E. 13-13, Pages 4-5).  Plaintiff is noted as possibly having "persistent and to some degree of recurrent Achilles insertional disease."  (D.E. 13-13, Page 5).  Continued use of a boot and home exercises were recommended as well as her medications, "hold[ing] off on" revision surgery.  (D.E. 13-13, Page 5).

On May 14, 2019, Plaintiff was treated by Dr. Amaral for treatment of her thyroid and nontoxic goiter.  (D.E. 13-15, Page 47).  Plaintiff reported she was fatigued, had difficulty lying flat, had constipation and diarrhea and joint stiffness and leg cramps but denied having neck pain, abdominal pain, frequent urination, muscle aches, shoulder pain, joint pain or lower back pain.  (D.E. 13-15, Pages 48-49).  Plaintiff is noted as walking with a boot.  (D.E. 13-15, Page 49).  Plaintiff's thyroid tests were to be repeated in September 2019.  (D.E. 13-15, Page 47).

On May 16, 2019, Plaintiff was treated at Oak Bend Medical Center for right hip pain.  (D.E. 13-16, Pages 48-50).  Plaintiff reported she was "progressing well until about two months" prior when she felt a "pop" getting up from a kneeling position.  (D.E. 13-16, Page 50).  Plaintiff also reported her pain was "on and off" but recently worsened and is noted as having increased pain and decreased range of motion in her right hip.  (D.E. 13-16, Page 50).  Plaintiff received a right hip injection.  (D.E. 13-16, Pages 51-52).  It was further noted that the "joint displayed mild degenerative change…with osteophytes present.   Joint space narrowing was mild…with evidence of femoroacetabular impingement."  (D.E. 13-16, Pages 52 and 54).

Plaintiff was treated by Dr. Aleman on May 29, 2019 for a lab work follow up regarding osteoarthritis. (D.E. 13-15, Page 76). Plaintiff's main complaint is noted as pain at four out of ten between her shoulder blades. (D.E. 13-15, Page 76). Plaintiff reported tramadol helped for her lower back pain but she was still hurting all over and was extremely fatigued. (D.E. 13-15, Page 76). Plaintiff is noted as having normal range of motion in her cervical spine, normal forward and lateral bending in her lumbar spine and a normal range of motion in her elbows, shoulders, wrists, knees and hips. (D.E. 13-15, Page 77). Plaintiff was assessed as having "unspecified osteoarthritis" and "pain in unspecified joint" and was prescribed prednisone and tramadol. (D.E. 13-15, Page 77).

On June 21, 2019, Plaintiff had an initial new patient appointment at Coastal Cardiology reporting chest pain with a tight sensation and an irregular heartbeat. (D.E. 13-15, Page 81). She further reported shortness of breath with any activity. (D.E. 13-15, Page 81). However, Plaintiff reported "no cardiac symptoms at this time of visit." (D.E. 13-15, Page 81). It is noted that Plaintiff was "voicing symptoms of chest discomfort that are atypical for angina…[with] no known precipitating or ameliorating factors. The chest discomfort is not associated with any symptoms such as nausea, vomiting or diaphoresis [and] timing duration again is atypical for angina pattern." (D.E. 13-15, Page 81). Plaintiff is noted as having normal posture and gait with a normal range of motion in all extremities as well as being alert and cooperative with a normal mood and affect and normal attention span and concentration. (D.E. 13-15, Page 84). A stress test was recommended. (D.E. 13-15, Page 81). On July 5, 2019, Plaintiff underwent a stress test. (D.E. 13-15, Page 87).

25 / 41

Plaintiff, using a treadmill, was found to have a "[n]ormal exercise response. Fair exercise tolerance.  Blood pressure response was normal."  (D.E. 13-15, Page 87).

On July 10, 2019, Plaintiff was treated at Future Focus Family Medicine for a cough and wheezing as well as anxiety.  (D.E. 13-15, Page 89).  Plaintiff was found to have acute bronchitis and anxiety.  (D.E. 13-15, Page 90).  A July 12, 2019 echocardiogram was normal, finding "no significant evidence of heart disease."  (D.E. 13-16, Page 4).  Plaintiff was prescribed medication for bronchitis.  (D.E. 13-16, Page 13).

Plaintiff was treated at Coastal Cardiology on July 22, 2019 to receive her cardiac test results.  (D.E. 13-16, Page 5).  Plaintiff is noted as in stable condition.  (D.E. 13-16, Page 5).  Plaintiff reported chest pain and discomfort, high blood pressure and arthritis. (D.E. 13-16, Page 7).  Plaintiff denied having swelling in her legs and ankles, leg or foot pain while walking, chest pain with exercise, muscle weakness, trouble walking, joint swelling, joint stiffness, back pain, joint pain, muscle cramps, restless legs, leg pain at night or leg pain with exertion.  (D.E. 13-16, Page 7).

On August 5, 2019, Plaintiff was treated at Future Focus Family Medicine for continued rib pain, shortness of breath and dry cough.  (D.E. 13-16, Page 10).  Plaintiff's anxiety is noted as "improving," she was assessed with acute bronchitis and scheduled for chest x-rays.  (D.E. 13-16, Page 11).

Plaintiff was treated at Nix Family Center on August 6, 2019.  (D.E. 13-16, Page 18).  Plaintiff reported persistent pain and swelling in her right foot and it was noted

Plaintiff had some recurrent bone formation anterior to the Achilles.  (D.E. 13-16, Page 20).  Additional surgery and associated risks were discussed.  (D.E. 13-16, Page 20).

      At the August 29, 2019 hearing, Plaintiff testified arthritis in her spine and neck was the worst ailment preventing her from working followed by scoliosis.  (D.E. 13-3, Page 45).  She also testified they caused issues with moving, sitting, standing or walking requiring daily muscle relaxers and Tramadol when the pain increases.  (D.E. 13-3, Page 45).  Plaintiff further testified she was not as active as she used to be, was afraid to leave the house without her husband and cannot spend time with her grandchildren because she gets tired easily, has pain and muscle spasms.  (D.E 13-3, Page 47).  Plaintiff stated she was working from home as a bookkeeper from 2015 through the end of February 2018 until she was laid off and did not realize how bad her ailments were because she could lay down, use the restroom every hour and heat or ice as needed without issue while at home. (D.E. 13-3, Pages 47-48 and 54-57).  Plaintiff also stated she needed to alternate between sitting and standing every 15 minutes, could walk about 100 feet and could lift no more than ten pounds.  (D.E. 13-3, Page 49).  Plaintiff further testified she has hip and foot pain causing balance issues and she cannot concentrate as side effects of her prescribed medications as well as depression, anxiety and fatigue.  (D.E. 13-3, Page 50).  Plaintiff stated she took care of her own grooming and helped cooking but she was more limited and required rest to complete certain tasks.  (D.E. 13-3, Pages 52-53).  Plaintiff further testified she could drive for about 30 minutes before needing a break.  (D.E. 13-3, Page 64).

Also at the hearing, the VE testified a person of Plaintiff's age, education and work experience who is limited to light work, including lifting up to 20 pounds occasionally, ten pounds frequently, standing and walking for about six hours, sitting for up to six hours in an eight hour work day with normal breaks and a sit/stand option, occasional climbing of ramps and stairs, no climbing ladders, and occasional stooping, kneeling, crouching and crawling could perform all of Plaintiff's prior work.  (D.E. 13-3, Page 62).  The VE further testified that a person limited to sedentary work without a sit/stand option with the same postural limitations could also perform all of Plaintiff's prior work.  (D.E. 13-3, Page 62).

On October 25, 2019, the ALJ issued a written decision, determining Plaintiff had the following severe impairments:  degenerative disc disease, degenerative joint disease in the right hip and obesity.  (D.E. 13-3, Page 4).  The ALJ considered the record and found Plaintiff's hypertension, hyperlipidemia, anemia, non-toxic goiter, diverticulosis, Achilles rupture, obstructive sleep apnea, dermatitis, osteoporosis, depression and anxiety would have no more than a minimal effect or limitation on Plaintiff's ability to work.  (D.E. 13-3, Pages 14-16).  The ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equals the severity of one of the listed impairments. (D.E. 13-3, Page 17).  The ALJ found Plaintiff had the RFC to perform sedentary work except that she could only occasionally climb ramps or stairs and stoop, kneel, crouch and crawl and could never climb ladders, ropes or scaffolds.  (D.E. 13-3, Pages 18-23).  The ALJ concluded Plaintiff was capable of performing her past relevant work as a bookkeeper, appointment clerk and loan interviewer/assistant.  (D.E. 13-3, Page 23).  Accordingly,

Plaintiff was found not to have been under a disability from March 1, 2018 through October 25, 2019, the date of the decision.  (D.E. 13-3, Page 23).  The Appeals Council declined Plaintiff's request for review on July 23, 2020, making the ALJ's October 25, 2019 decision final.  (D.E. 13-3, Pages 2-5).

## VI.    ANALYSIS

Plaintiff alleges the ALJ's RFC is not supported by substantial evidence in the record as to her physical functional limitations as the ALJ failed to develop the record. Specifically, Plaintiff asserts the ALJ should have re-contacted consultative examiner Dr. Hector Ortiz for an opinion of Plaintiff's physical limitations as Dr. Ortiz did not provide a function-by-function opinion of Plaintiff's work-related limitations.  Plaintiff argues the state agency determinations at the initial and reconsideration levels "found there was insufficient evidence to make a determination and required a consultative examination." (D.E. 20, Page 11 and D.E. 13-4, Pages 6 and 22).  Plaintiff further argues the ALJ found the opinions of state agency physicians Dr. Reddy and Dr. Fox to be unpersuasive.  (D.E. 20, Page 12 and D.E. 13-3, Page 22).  Accordingly, Plaintiff argues "the ALJ made up [her] RFC determination without any support from any medical provider, despite [her] ability to obtain such information from Dr. Ortiz."  (D.E. 20, Page 12).  Without this evidence, Plaintiff asserts the ALJ simply expressed her own opinion about the medical issues in this case and is not permitted to do so.

"The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84

F.3d 726, 728 (5th Cir. 1996) (citation omitted). "Generally, however, the duty to obtain medical records is on the claimant." *Gonzalez v. Barnhart*, 51 F. App'x 484 (5th Cir. 2002) (The ALJ, who made numerous inquiries regarding Plaintiff's medical condition and employment history and also inquired as to whether Plaintiff desired to present additional evidence, did not fail to develop the record by not ordering a consultative examination and a consultative examination was not necessary to enable the ALJ to make a disability determination). The burden of proof lies with the Plaintiff to prove disability under the first four steps of the five-step inquiry. *Leggett*, 67 F.3d at 564. Further, the Fifth Circuit has held the absence of a medical source statement about a plaintiff's ability to work does not, by itself, make the record incomplete. *Ripley v. Charter,* 67 F.3d 552, 557 (5th Cir. 1995). Instead, the issue is whether substantial evidence exists in the record to support the ALJ's decision. *Id*. To be substantial, such evidence must establish the effect claimant's ailments had on that claimant's ability to work. *Id*.

The ALJ satisfied the duty to develop the record by thoroughly reviewing the medical records from Plaintiff's treating physicians regarding any physical limitations, the VE's testimony, Plaintiff's testimony and Function Reports as well as the functional reports of two state agency physicians. The ALJ properly evaluated Plaintiff's impairments and the completeness of the record before determining Plaintiff's RFC. (D.E. 13-3, Pages 18-23).[1]

---

[1]Because Plaintiff filed her application for disability insurance benefits on September 28, 2018, the new rule applies which provides the Commissioner is no longer required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a). Instead,

Reviewing the record, objective tests show no more than mild to moderate ailments. For example, an MRI of Plaintiff's right hip on May 5, 2017 showed mild degenerative type edema and mild osteoarthristis; imaging on July 27, 2018, showed a "fairly small" tear of the superior labrum with "[n]o chondral defects and "[n]ormal osseous morphology" along with moderate osteoarthritis of the hip joint with minimal degenerative changes; imaging on May 16, 2019, showed "joint displayed mild degenerative change…with osteophytes present.  Joint space narrowing was mild…with evidence of femoroacetabular impingement;" and by February 5, 2019, post-surgery, imaging showed Plaintiff's right hip was normal.  (D.E. 13-10, Page 12; D.E. 13-12, Pages 36 and 40-41; D.E. 13-15, Pages 17-18 and D.E. 13-16, Pages 43-45, 52 and 54).  Imaging of Plaintiff cervical spine from May 11, 2018 showed "no significant degree of …stenosis at any level" without any herniations, fractures or lesions and normal signal.  (D.E. 13-16, Pages 30 and 41). Imaging of her lumbar spine the same day showed "[s]table mild thoracolumbar levoscoliosis with associated mild degenerative disc disease and facet arthropathy.  No focal herniation.  No significant degree of…stenosis.  No fracture or destructive process. No anomalous segments.  No significant interval change…"  (D.E. 13-16, Pages 31 and 40).  It is noted that her cervical spine MRI did not reveal any evidence of stenosis and her lumbar spine MRI "did not reveal any areas of nerve root compression to explain her lower extremity symptoms." (D.E. 13-16, Page 31).   On February 5, 2019, an x-ray of Plaintiff's

---

the Commissioner is to consider all medical opinions and prior administrative medical findings using the factors outlined in the rule, the most important of which are supportability and consistency. *Id.* at § 404.1520c(b)(2).

lumbar spine showed mild degenerative disc disease, facet arthropathy and levoscoliosis without no spondylolisthesis or fracture and stable levoscoliosis.  (D.E. 13-12, Pages 36 and 40-41).  A gastric biopsy in August 2018 showed "[m]ild inactive chronic gastritis." (D.E. 13-9, Page 33).  Thyroid function tests in November 2018 and February 19, 2019 were normal.  (D.E. 13-15, Pages 44 and 52).  In January 2019, Plaintiff was diagnosed with mild sleep apnea.  (D.E. 13-11, Page 31).  EEGs, stress testing and echocardigorams were all normal in January and July 2019.  (D.E. 13-11, Page 12; D.E. 13-15, Page 87; D.E. 13-16, Page 4).

Additionally, as to Plaintiff's right foot ailment, on April 3, 2017, Plaintiff is noted as having "[m]ild signs of plantar fasciitis with plantar heel pain" and "[s]ignificant tenderness to palpitation along the insertion of the Achilles tendon."  (D.E. 13-8, Page 5). In July and August 2017, Plaintiff had right foot Achilles tendon surgery.  (D.E. 13-9, Page 19).  By October 2017, Plaintiff reported her Achilles tendon was improving.  (D.E. 13-13, Page 18).  Tenderness is noted without swelling and she is noted as "doing well."  (D.E. 13-13, Page 18).  The next month, November 2017, Plaintiff is noted as having been "weightbearing as tolerated in a regular athletic shoe."  (D.E. 13-13, Page 12).  Plaintiff is then consistently noted as ambulating normally and being "able to stand and walk independently without difficulty" throughout 2018 and the beginning of 2019. (D.E. 13-12, Page 12; D.E. 13-9, Pages 4-5, 6-8, 11, 15; D.E. 13-15, Page 52; D.E. 13-16, Pages 24-25, 27, 30, 33).  Plaintiff was also noted as having a normal gait and posture with the ability to walk on the heels and toes without difficulty and having good strength proximally and

distally in the arms and legs.  (D.E. 13-11, Page 11).  In March 2019, Plaintiff reported she injured her right ankle and foot when she was getting off the ground from picking up an object under her truck.  (D.E. 13-13, Pages 7-11).  An April 18, 2019 MRI indicated her Achilles tendon was intact.  (D.E. 13-13, Pages 7 and 25).  By May 2019, Plaintiff is noted as having intermittent swelling and occasional pain and is noted as possibly having "persistent and to some degree of recurrent Achilles insertional disease."  (D.E. 13-13, Page 5).  By June 2019, Plaintiff is noted as having normal posture and gait with a normal range of motion in all extremities and in July 2019, Plaintiff is noted as having a "[f]air exercise tolerance" and denying any leg or foot pain while walking.  (D.E. 13-15, Pages 84 and 87 and D.E. 13-16, Page 7).  While additional surgery was discussed in August 2019 because of Plaintiff's reported persistent pain and swelling in her right foot, there is no evidence in the record of any additional surgeries.  (D.E. 13-16, Pages 18-20).

As to Plaintiff's hip, shoulder, neck and back ailments, in addition to objective testing consistently showing mild to moderate ailments as discussed above, Plaintiff is again regularly noted as ambulating normally, having normal range of motion and strength in her extremities and no generalized joint pain, stiffness, weakness or muscle pain.  (D.E. 13-9, Pages 3-4, 6-8, 11 and 15; D.E. 13-12, Pages 5 and 12; D.E. 13-15, Pages 25, 52, 84, and 87; D.E. 13-16, Page 27-28, 30-31, 33, 34).  Range of motion in her hip in July 2018 was normal without pain and in August 2018, Plaintiff reported significant pain reduction in her hip after receiving an injection.  (D.E. 13-16, Pages 34 and 46).  Plaintiff reported having no neck, shoulder or joint pain in November 2018 and having "no exercise

intolerance" in October 2018.  (D.E. 13-9, Pages 3-4 and D.E. 13-15, Pages 45-46).  After her hip surgery to fix the "fairly small tear" in her superior labrum in November 2018, Plaintiff is noted as "progressing well" and after December 2018, Plaintiff is again consistently noted as ambulating normally.  (D.E. 13-10, Page 12; D.E. 13-11, Page 19; D.E. 13-12, Pages 5 and 12; D.E. 13-15, Page 52).  By January 2019, Plaintiff is not only noted as having a normal gait and posture but also having the ability to walk on her heels and toes without difficulty, having good strength proximally and distally in the arm and legs and having her hip "progressing well" post-op with well-tolerated pain.  (D.E. 13-11, Pages 11 and 24).  An x-ray of her hip in February 2019 was normal.  (D.E. 13-12, Pages 36 and 40-41).  Plaintiff is noted as having a full range of motion in her neck in April 2019 and in May 2019 as having a normal range of motion in her cervical spine, normal forward and lateral bending in her lumbar spine, normal range of motion in her shoulders, elbows and wrists and normal range of motion in her hips and knees.  (D.E. 13-15, Pages 15 and 75).  On May 16, 2019, Plaintiff reported her hip was "progressing well until about two months" prior when she felt a "pop" getting up from a kneeling position and that her pain was "on and off" but recently worsened and is noted as having increased pain and decreased range of motion in her right hip.  (D.E. 13-16, Page 50).  After Plaintiff received a right hip injection, Plaintiff is noted two weeks later as having normal range of motion in her cervical spine, normal forward and lateral bending in her lumbar spine and a normal range of motion in her elbows, shoulders, wrists, knees and hips on May 29, 2019.  (D.E. 13-15, Page 77 and D.E. 13-16, Pages 51-52).  In June 2019, Plaintiff is again noted as having a normal

posture and gait with a normal range of motion in all extremities and a "[f]air exercise tolerance" after a stress test. (D.E. 13-15, Pages 84 and 87). By July 2019, Plaintiff denied having any back pain or joint stiffness. (D.E. 13-16, Page 7).

Further, the ALJ considered Plaintiff's testimony regarding her physical limitations and daily activities in conjunction with the medical evidence in making her RFC determination. (D.E. 13-3, Pages 18-19). However, the ALJ appropriately found Plaintiff's statements regarding the severity of her limitations were not credible. All of Plaintiff's ailments and resulting limitations are discussed throughout Plaintiff's extensive treatment records. The ALJ, who questioned the Plaintiff at length and observed her during the hearing, also thoroughly reviewed her treatment records and was not required to order additional and/or clarifying consultative examinations or additional medical testimony in order to make a disability determination in this case. The ALJ possessed sufficient evidence to fully and fairly develop the record, noting the inconsistencies between Plaintiff's testimony and reported limitations and the medical reports obtained reflecting her physical abilities. While the ALJ found the opinions of state agency physicians Drs. Reddy and Fox unpersuasive, the ALJ did so because "the objective medical evidence received at the hearing level supports a finding that the claimant is capable of no more than a sedentary exertional capacity," not because the record was somehow incomplete. (D.E. 13-3, Page 22). Rather, the ALJ appropriately considered the additional evidence in the record received after their opinions that Plaintiff could perform light work were rendered, including Plaintiff's additional medical records and hearing testimony, limiting Plaintiff

beyond these two opinions to restricted sedentary work.  The undersigned recommends substantial evidence supports the ALJ's decision that Plaintiff had the RFC to perform her past relevant work as a bookkeeper, appointment clerk and loan interviewer/assistant. *Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003) ("We also reject [the claimant's] argument that because the record was devoid of [an RFC] assessment by a medical source, the ALJ was not competent to assess her RFC.  It is the ALJ's responsibility to determine a claimant's RFC, and such an assessment is not a medical opinion.")

Further, even if an extended or additional consultative examination was necessary, to obtain a remand for an ALJ's failure to develop the record, Plaintiff must demonstrate she was prejudiced by the deficiencies she alleges. *Brock*, 84 F.3d at 728 (explaining Plaintiff "must show that he could and would have adduced evidence that might have altered the result") (citation omitted); *Gonzalez*, 51 F. App'x at 484 (Even if a consultative examination was necessary, Plaintiff must make a sufficient showing of prejudice which she has not done because she "has failed to present any evidence or argument showing [her ailments] affected her ability to perform her past relevant work.")  Such prejudice "can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision."  *Ripley*, 67 F.3d at 557 n. 22 (citing *Kane v. Heckler,* 731 F.2d 1216, 1220 (5th Cir.

ORDERED on November 15, 2021.

Jason B. Libby
United States Magistrate Judge

1984)).

Here, Plaintiff has failed to make a sufficient showing of prejudice and points to no new sufficient evidence that, had the ALJ developed the record further, would have been offered at the hearing and changed the result. Plaintiff offers only a supposition that "Dr. Ortiz may have provided limitations in excess of those crafted by the ALJ causing a different outcome for this Plaintiff." (D.E. 20, Page 15). The ALJ conducted a review of the entire record, including Plaintiff's own testimony regarding her pain and limitations repeatedly cited by Plaintiff in her briefing and used this information when determining Plaintiff's RFC. The ALJ did not have a duty to request further or clarifying consultative examinations when the record already contained substantial evidence upon which to make a determination as discussed above.

Further, while Plaintiff asserts the facts in *Ripley* are similar to those in this case, the undersigned disagrees and recommends Plaintiff's case is factually distinguishable. In *Ripley*, the plaintiff appealed the district court's grant of summary judgment upholding the denial of benefits, and the Fifth Circuit remanded finding new, material evidence relating to Ripley's disability claim was now available and the ALJ's decision was not supported by substantial evidence because the only evidence about Ripley's ability to work came from his own testimony. 67 F.3d at 553 and 557. In this case, the ALJ heard testimony

from an accredited VE and Plaintiff and also reviewed Dr. Ortiz's observations as well as several state agency physician's opinions regarding the effects of Plaintiff's conditions on her ability to work.  Further, a year after the ALJ denied Ripley's claim, Ripley submitted new objective medical evidence in support of his previously discredited subjective complaints of pain, which the Fifth Circuit determined should be considered at the administrative level.  *Id*. at 555-556.  Here, as discussed above, Plaintiff did not submit any new medical evidence in support of her subjective complaints of pain and/or functional limitations.[2]

Even though the record illustrates Plaintiff suffers from several impairments, substantial evidence supports the ALJ's conclusion that Plaintiff's impairments did not prevent her from working.  *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) ("[T]he test for disability under the Social Security Act is not satisfied merely because Plaintiff cannot work without some pain or discomfort. Plaintiff must show that she is so functionally impaired that she is precluded from engaging in substantial gainful activity.") (citations omitted).  "The ALJ must consider subjective evidence of pain, but it is within his discretion to determine that pain's disabling nature.  Such determinations are entitled to considerable deference." *Wren v. Sullivan,* 925 F.2d 123, 128 (5th Cir. 1991) ("Disabling pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment.") (citations omitted).  Plaintiff's argument requests the Court to reweigh the evidence, try the

---

[2]The undersigned notes the ALJ held the record open after the hearing for additional medical records to be submitted and on September 10, 2019, Plaintiff's counsel advised the ALJ no further evidence needed to be submitted.  (D.E. 13-7, Page 89).

issues de novo, or substitute the Court's judgment for that of the Secretary, all of which it cannot do.  *Greenspan*, 38 F.3d at 236.  Therefore, the undersigned recommends Plaintiff's arguments are without merit.

## VII.   CONCLUSION

For the reasons above, the undersigned **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **DENIED** (D.E. 19), the Commissioner's Motion for Summary Judgment be **GRANTED** (D.E. 21) and this case be **DISMISSED**.

ORDERED on November 15, 2021.

Jason B. Libby
United States Magistrate Judge

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).